IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EDWARD MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. CIV-10-620-C |
| | ) | |
| CLEVELAND COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

Plaintiff was employed by the Cleveland County Sheriff's Office. Plaintiff's job duties included oversight of the Cleveland County Detention Center ("CCDC"). In 2009, Defendant Lester took office as the Cleveland County Sheriff. At that time, Plaintiff's job title was changed from Detention Captain to Chief of Detention. Defendant Lester asserts that because he was dissatisfied with Plaintiff's performance he hired Andrew Kidd to serve as Chief of Detention and changed Plaintiff's position to Lieutenant of Detention. Plaintiff's pay did not change with this action. Later in 2009, due to a reduction in budget, the Sheriff's Office implemented a reduction in force ("RIF"), releasing 10 employees. One of the employees was Plaintiff.

Asserting that his termination was due to his race and/or in retaliation for engaging in protected conduct, Plaintiff filed a discrimination charge with the Oklahoma Human Rights Commission. After receiving his notice of right to sue, Plaintiff filed the present action alleging violation of 42 U.S.C. § 2000e ("Title VII"), 42 U.S.C. § 1981, the Fourteenth Amendment, and Oklahoma's public policy.

Arguing that the undisputed material facts demonstrate that Plaintiff is not entitled to relief, Defendants filed the present Motion for Summary Judgment. In support of their motion, Defendants argue that Plaintiff cannot establish a prima facie case because the undisputed facts demonstrate that Plaintiff's termination was due to a RIF and not his race. In response, Plaintiff argues that his claims should survive, as he has established a prima facie case and has offered evidence demonstrating that Defendants' purported nondiscriminatory reasons are mere pretext.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at

324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## **DISCUSSION**

Although Plaintiff raises claims under numerous theories, the analysis of the evidence and applicable law is the same for each. See Aramburu v. Boeing Co., 112 F.3d 1398, 1403, n.3 (10th Cir. 1997); English v. Colo. Dept. of Corr., 248 F.3d 1002, 1007 (10th Cir. 2001). Because Plaintiff offers no direct evidence of discrimination, analysis of the case proceeds under the familiar McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that standard, the required elements of a prima facie case are: "(1) a plaintiff was within the protected group, (2) plaintiff was doing satisfactory work, (3) plaintiff was discharged despite the adequacy of his work, and (4) there is some evidence that the employer intended to discriminate against the plaintiff in reaching its RIF decision." Juarez v. ACS Gov't Solutions Grp., Inc., 314 F.3d 1243, 1245-46 (10th Cir. 2003). Although the parties dispute the second factor and whether or not it was relied on in reaching the decision to RIF Plaintiff, when viewed in the light most favorable to Plaintiff, the Court finds Plaintiff has satisfied this element. The only other element of the

prima facie case in dispute is the fourth. Defendants argue that Plaintiff was terminated based on economic factors. Plaintiff counters, arguing that Plaintiff's race played at least some role in the decision to terminate him. Although it is a close question, when viewed solely as a part of the prima facie case, and when viewed in the light most favorable to Plaintiff, the evidence supports the fourth element. Plaintiff argues that his position was not eliminated as a result of the RIF but that Defendants terminated him and replaced him with a non-minority employee. See Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1193 (10th Cir. 2006) (recognizing that fourth element can be satisfied through circumstantial evidence that plaintiff was treated less favorably than non-minority employees during RIF).

Once Plaintiff has established a prima face case, the burden shifts to Defendants to offer a legitimate nondiscriminatory reason for the employment action. Id. Here, Defendants have satisfied their burden of production by stating the reason Plaintiff was terminated was a RIF mandated by a budget shortfall. Thus, the burden now "shifts back again to the plaintiff to show that the defendant's proffered reasons were a pretext for discrimination." Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994). In an attempt to meet his burden, Plaintiff offers a number of arguments he says demonstrate the pretextual nature of Defendants' decision to terminate him rather than some other employee. Plaintiff argues that this is a mixed motive case and therefore his claim survives if his race was a motivating factor even if other factors also motivated the decision to terminate him. Alternatively, Plaintiff argues that Defendants' stated reason cannot be believed because Defendants did

not eliminate his position but actually refilled the position. Plaintiff also argues that Defendants did not follow the oral RIF criteria of job eliminations because another employee whose job could have been eliminated was not terminated. Plaintiff notes that there is a significant dispute over the role, if any, Plaintiff's performance played in the decision to terminate him rather than another employee. Plaintiff points to several factual statements by Defendants related to the RIF that Plaintiff argues are false. Plaintiff argues that Defendants' shifting and/or false rationale for the termination are grounds from which the jury could find pretext. Finally, Plaintiff argues the demographic evidence demonstrates Defendants' stated reason for the RIF is pretext. Plaintiff argues that all African-American persons employed by Defendants had left their positions within a few months of the RIF.

Although many of Plaintiff's arguments are simply unsupported by the facts, it is unnecessary to resolve which are well supported and which are not. Even were the Court to credit each of Plaintiff's attacks on Defendants' nondiscriminatory showing, no rational factfinder could infer a discriminatory motive in light of Plaintiff's testimony. It is undisputed that Defendants Lester and Burnett were the decisionmakers regarding who was terminated during the RIF. When asked about his complaints about either Defendant, Plaintiff testified as follows:

Q. All right. Did you ever have any conflict with Undersheriff Burnett?

A. Conflict, no.

Q. How about any conflict with Sheriff Lester?

A. No. I've never had any conflict with the sheriff or the undersheriff. The undersheriff, I've known him for a long time and consider him a friend.

Q. All right. Do you have any complaints at all about Sheriff Lester or Undersheriff Burnett with regard to your employment with the Cleveland County Sheriff's Office during the time that they were sheriff and undersheriff?

A. The only complaint I would have is that I was a one-man show. I mean, I was running the jail. I was on the drug court team. I was on the district pretrial release team. I was busy getting inmates out of the jail, but I was never given assistance to help me out with this, any of this, you know.
The previous jail administrators, the current jail administrators - - they all get assistants, an assistant, should I say. And regardless of their title, they all have an assistant. Although I asked several times, I was never given an assistant. So I did all this on my own.

Q. All right. Do you have any other complaints about either Sheriff Lester or Undersheriff Burnett other than that?

A. The undersheriff, no, other than, you know, the man listened to me; but he always said "I had no voice in this." The sheriff, yes, he said "if you get the training, there's $10,000 more in for you."
Now, today is the first time I've heard about something in Colorado. One thing I did get - - and that's through the corrections - - administering medium to small size jails. I went and got that.
And then when - - I think it was $25 you had to pay. This was already preapproved. And was - - when this - - they gave me $25, the sheriff got upset. He says, "we don't belong to the OSA and" - - "I wasn't trying to join the OSA. You said get the training." And that was the only thing available out there. I said "I will pay for it." He said "never mind" and walked out of the office.

6

> Q. All right. Were there any other complaints you have about either Sheriff Lester or Undersheriff Burnett?
>
> A. No, sir.

(Dkt. No. 39, Att. I, pp. 64-67). Plaintiff never opines that he was discriminated against. In fact, nowhere in any of the exhibits submitted by Plaintiff does he offer even a remote suggestion that Sheriff Lester or Undersheriff Burnett discriminated against him because of his race. In the absence of any evidence that Plaintiff believed he was discriminated against, no rational jury could find discrimination. That Plaintiff may offer different evidence at trial does not salvage his case. As Plaintiff argues in his surreply brief, the Tenth Circuit imposes a duty to disclose relevant information in a deposition even when a precise question was not asked. See Juarez v. Utah, 263 F. App'x 726, 735 (10th Cir. 2008) (affirming district court's refusal to credit affidavit claiming instances of racial discrimination where deposition was silent on issue).

Rather than point to instances of discrimination, Plaintiff attempts to make his case based solely on the allegation that he was performing his job adequately and yet was still subject to the RIF. Plaintiff then reaches the unsupported conclusion that his termination must have been discriminatory and the RIF was simply a ploy. Even when this evidence is viewed in the light most favorable to Plaintiff, it is insufficient to support his claim of discrimination. See Miller v. Eby Realty Grp. LLC, 396 F.3d 1105, 1111 (10th Cir. 2005) ("In drawing such inference [of unlawful discrimination], the factfinder must be able to

7

conclude, based on a preponderance of the evidence, that discrimination was a determinative factor in the employer's actions–simply disbelieving the employer is insufficient.").

The parties are in dispute over whether Plaintiff raised a retaliation claim. Defendants argue that no retaliation claim was pleaded in the Complaint or in the EEOC charge. Defendants are incorrect about the EEOC charge. That document clearly notes that Plaintiff is bringing a charge for retaliation. However, Plaintiff did not raise a claim of retaliation in either his Complaint or in the Status Report. It is not until Plaintiff's response brief that he attempts to flesh out a claim for retaliation. However, Plaintiff has to date not requested leave to amend his Complaint. Accordingly, the Court declines to consider the retaliation claim on its merits. See Fuqua v. Lindsey Mgmt. Co., Inc., 321 F. App'x 732, 734-35 (10th Cir. 2009) (discussing when a claim first raised in response to summary judgment can be considered).

Because the Court has determined that no reasonable jury could find for Plaintiff on the discrimination claims, it is unnecessary to consider Defendants Lester and Burnett's request for qualified immunity.

For the reasons set forth herein, Defendants' Motion for Summary Judgment (Dkt. No. 38) is GRANTED. A separate judgment shall issue

IT IS SO ORDERED this 5th day of July, 2011.

ROBIN J. CAUTHRON
United States District Judge